UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

ANGEL JENKINS, on behalf of herself and
 all others similarly situated,

                 Plaintiff,

           v.

HIMS & HERS HEALTH, INC.

                Defendant,

-----------------------------------------------------------------

Case No.

**CLASS ACTION
COMPLAINT
& DEMAND FOR JURY
TRIAL**

Plaintiff, **ANGEL JENKINS** ("Plaintiff" or "Ms. Jenkins"), on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, JOSEPH & NORINSBERG, LLC, as and for their class action complaint upon Defendant, HIM & HERS HEALTH, INC., ("Hims and Hers" or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1.    Plaintiff Angel Jenkins is a legally blind individual. Her vision loss is the result of **Endophthalmitis** that developed following a serious vehicular accident which caused significant trauma to both eyes. As confirmed by Dr. James R. Gordon, M.D., resulting infection led to permanent and irreversible vision loss, for which there are currently no known corrective procedures. Ms. Jenkins also continues to experience debilitating headaches associated with her condition. She requires screen-reading software to navigate digital content and relies on accessible websites to manage her health and daily affairs. (See **Ex. A** – *Medical Letter, Westchester Eye Associates*, dated 1/20/2026.)

2.    Plaintiff, ANGEL JENKINS, brings this action against Defendant, HIMS & HERS

1

HEALTH, INC., for violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. Defendant owns and operates the e-commerce platforms **www.hims.com** and **www.forhers.com**, which offer health and wellness products, telehealth services, and subscription-based medical treatments. Despite its role as a major provider of digital healthcare, Defendant has failed to ensure that its websites are accessible to blind and visually impaired individuals, including Plaintiff.

3.    HIMS & HERS HEALTH, INC. markets a wide array of prescription and over-the-counter treatments for hair loss, sexual health, mental health, and skin care. These services intersect directly with Ms. Jenkins' medical needs as she seeks to manage her health independently following her accident. The company's digital platforms are intended to serve as a primary gateway for consumers seeking medical consultations, subscription management, and pharmaceutical information.

4.    Defendant's websites serve as the primary digital interface for consumers to access health-related goods and services. For individuals like Ms. Jenkins, who is currently adapting to permanent visual impairment and relies on assistive technology like the **NVDA screen reader**, and/or **JAWS, t**hese websites must provide clear, labeled pathways. However, when Ms. Jenkins attempted to navigate Defendant's websites, she was met with widespread accessibility barriers. The sites lack accessible navigation and fail to comply with basic digital inclusion standards, preventing her from independently managing her health needs.

5.    This failure denies Ms. Jenkins equal access to critical health-related information and support services. For a blind individual adapting to a permanent disability, the inability to independently engage with a primary digital healthcare provider is not merely inconvenient—it is

2

discriminatory. Defendant's exclusionary design violates the Americans with Disabilities Act and reflects a broader disregard for the needs of blind and visually impaired consumers.

6.    Plaintiff relies exclusively on screen-reading software to interact with websites and digital platforms. She attempted to access Defendant's websites on multiple occasions to locate health services and product information relevant to her care. However, she was repeatedly denied meaningful access due to widespread accessibility barriers. These barriers—confirmed by recent **SortSite** audits conducted on January 22, 2026—include:

  □ **Hims.com**: 37 Level A issues identified across 3,243 pages, including videos that play longer than 5 seconds without a pause control, images with useless alt-text like "Image," and ARIA controls lacking descriptive labels. A quality report indicated **3,274 pages** have accessibility problems, which is "worse than average."

  □ **Forhers.com**: 40 Level A issues identified across 1,259 pages, including elements with roles that hide child elements from screen readers, empty ARIA menu items, and "empty" links that provide no context.

7.    These violations of WCAG 2.1 Level AA standards render the site inaccessible to blind users. Plaintiff remains eager to return to the site once it is remediated, as Hims & Hers Health, Inc., represents a promising option for managing critical health-related information and support services.

8.    Plaintiff brings this civil action against Defendant for its failure to design, construct, maintain, and operate its websites to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired individuals. Defendant's denial of full and equal access to www.hims.com and www.forhers.com—and thus its denial of the goods and services offered therein—constitutes a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

3

9. The blind have an even greater need than the sighted to shop and conduct purchases online due to the challenges faced in mobility. The lack of an accessible website means that blind people are excluded from experiencing transacting with Defendant's website and from purchasing goods or services from Defendant's website.

10. Based on a 2020 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind. According to a 2016 report published by the National Federation of the Blind, approximately 418,500 visually impaired persons reside in the State of New York.

11. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York state law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

12. Plaintiff browsed and intended to purchase specific products from HIMS & HERS HEALTH, INC, including **Hers Thickening Shampoo**, **Hers Thickening Conditioner**, **Hers Hydrating Cleanser**, **Hers Hyaluronic Acid Serum**, **Hers Glide Lubricant**, **Hers Minoxidil for Women**, **Hers Weight-Loss Medication Kits**, Despite her efforts, however, Plaintiff was denied a shopping experience like that of a sighted individual due to the Website's lack of a variety of features and accommodations. Unless Defendant remedies the numerous access barriers on its websites, Plaintiff and Class members will continue to be unable to independently navigate,

4

browse, use, and complete a purchase on www.hims.com and/or  www.forhers.com.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §
1331, as Plaintiff asserts claims arising under federal law, including Title III of the Americans
with Disabilities Act (42 U.S.C. § 12181 et seq.) and Section 504 of the Rehabilitation Act of 1973
(29 U.S.C. § 794).

14.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's
claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.)
("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.
("NYCHRL"); and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL")
as these claims form part of the same case or controversy under Article III of the United States
Constitution.

15.    Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), in that Defendant
conducts and continues to conduct a substantial and significant amount of business in this District
via the Internet, and a substantial portion of the conduct complained of herein occurred in this
District because Plaintiff attempted to utilize, on several occasions, the subject Websites,
www.hims.com  and www.forhers.com,  within her home in Bronx County, New York, located
within this Judicial District, and the harm alleged in this Complaint occurred entirely within the
territorial bounds of this District.

16.    Defendant HIMS & HERS HEALTH, INC. is a Delaware corporation incorporated
on October 21, 2014. Its registered agent for service of process is The Corporation Trust Company,

located at 1209 Orange Street, Wilmington, Delaware 19801.

17.    Defendant HIMS & HERS HEALTH, INC. operates a direct-to-consumer e-commerce and telehealth platform that targets New York residents, including Plaintiff, through its commercial websites, www.hims.com and www.forhers.com. Defendant sells proprietary personal-care products, prescription treatments, and telehealth services to consumers in New York, and regularly ships products to individuals located within this District. Defendant's websites are highly interactive and are intentionally designed to solicit, process, and complete transactions with New York consumers. These activities constitute continuous and systematic contacts sufficient to establish personal jurisdiction.

18.    Defendant's website is publicly accessible in New York and is designed to solicit purchases, subscriptions, and user engagement from New York residents. Plaintiff, a legally blind individual residing in Bronx County, New York, attempted to access the website multiple times using screen-reading software. The discriminatory barriers encountered by Plaintiff occurred entirely within this Judicial District and form the basis of this action.

**PARTIES**

19.    Plaintiff **ANGEL JENKINS** ("Plaintiff" or "Ms. Jenkins") is a legally blind individual residing in the State of New York. Due to permanent vision loss caused by traumatic Endophthalmitis, Ms. Jenkins relies exclusively on screen-reader software and keyboard navigation to access websites, review product information, and complete online purchases. She is a consumer of personal-care products, skincare items, sexual-wellness products, and routine health-related treatments that are fully accessible to blind users when websites are properly designed.

6

20.    Defendant **HIMS & HERS HEALTH, INC.** ("Hims & Hers" or "Defendant") is a Delaware corporation with its principal place of business located at 2269 Chestnut Street, Suite 523, San Francisco, California 94123. Defendant owns, operates, and controls the commercial websites www.hims.com  and www.forhers.com,  which serve as the exclusive platforms through which the company markets, sells, and distributes its proprietary products and telehealth services throughout the United States, including to consumers in the State of New York.

21.    Defendant is a place of public accommodation within the meaning of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181(7), because it owns and operates online business establishments that offer goods and services to the general public. Defendant is also subject to the accessibility requirements of the New York State Human Rights Law and the New York City Human Rights Law because it conducts business with consumers located in New York.

22.    Defendant's websites function as the sole gateway through which consumers may review product information, complete telehealth intake, communicate with licensed providers, manage subscriptions, and purchase proprietary products such as **Hers Thickening Shampoo**, **Hers Thickening Conditioner**, **Hers Hydrating Cleanser**, **Hers Hyaluronic Acid Serum**, **Hers Glide Lubricant**, **Hers Minoxidil**, and **Hers Weight-Loss Medication Kits**. Defendant does not maintain physical retail locations, and no alternative accessible channel exists for blind consumers to obtain these goods and services.

### NATURE OF ACTION

23.    This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this

7

District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

24.    The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

25.    In today's tech-savvy world, blind and visually impaired people can access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use to independently access the Internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites and the information, products, goods, and services contained thereon.

26.    Blind and visually-impaired users of Windows-enabled computers have access to several screen-reading programs. Some are commercially licensed (JAWS), while others—such as Nonvisual Desktop Access ("NVDA"), which Plaintiff uses daily—are freely available. NVDA enables blind users to navigate digital platforms independently, provided those platforms are properly coded for accessibility.

27.    For screen-reading software to function, the information on a website must be

8

capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

28.    Screen readers operate based on sophisticated rules that interpret digital content gathered from the operating system, browser, and application layers. They convert this information into speech, Braille, or other accessible formats. When websites fail to meet accessibility standards, these tools cannot bridge the gap.

29.    The international website standards organization, the World Wide Web Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

30.    Non-compliant websites pose common access barriers to blind and visually impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

    a.    A text equivalent for every non-text element is not provided;

    b.    Title frames with text are not provided for identification and navigation;

    c.    Equivalent text is not provided when using scripts;

    d.    Forms with the same information and functionality as for sighted persons are not provided;

    e.    Information about the meaning and structure of content is not conveyed

by more than the visual presentation of content;

f.     Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.     If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.     Web pages do not have titles that describe the topic or purpose;

i.     The purpose of each link cannot be determined from the link text alone or from the link text and the programmatically determined link context;

j.     One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.     The default human language of each web page cannot be programmatically determined;

l.     When a component receives focus, it may initiate a change in context;

m.     Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.     Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.     In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to the specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.     Inaccessible Portable Document Format (PDF); and

q.     The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

31.     Websites have features and content that are modified on a daily, and in some

instances, hourly basis, and a one-time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## STATEMENT OF FACTS

32.    Plaintiff, Angel Jenkins is a legally blind consumer residing in Bronx County, New York. Plaintiff receives ongoing care from the New York State Office of Children and Family Services Commission for the Blind and has been referred for assistive technology evaluation and orientation and mobility training to support her independence and quality of life.

33.    Ms. Angel Jenkins is a legally blind consumer who relies on screen-reader software and keyboard navigation to independently access websites, review product information, and complete online purchases. Due to permanent vision loss caused by traumatic Endophthalmitis, Ms. Jenkins cannot visually perceive website content and depends entirely on accessible digital interfaces to obtain goods and services. She regularly purchases everyday products such as hair-care items, skincare products, sexual-wellness products, and routine health-related treatments that do not require visual monitoring and are commonly used by women with profound vision loss.

34.    Hims and Hers operate primarily, and in many cases exclusively, through their websites. The companies do not maintain physical retail locations where consumers can browse or

purchase products. As a result, the websites are the only means by which consumers can review product information, complete telehealth intake, communicate with providers, and purchase goods such as **Hers Thickening Shampoo**, **Hers Thickening Conditioner**, **Hers Hydrating Cleanser**, **Hers Hyaluronic Acid Serum**, **Hers Glide Lubricant**, **Hers Minoxidil for Women**, **Hers Weight-Loss Medication Kits**, and other routine personal-care and telehealth products.

35.     On November 4, 2025, and November 14, 2025, Ms. Jenkins visited the Hims and Hers websites with the genuine intention of researching and purchasing several of these products. These items are tactile, routine-based, and accessible to blind consumers because they do not require visual precision to use. However, during her visits, she encountered multiple accessibility barriers that prevented her from identifying products, accessing descriptions, navigating menus, completing telehealth intake, or completing a purchase.

36.     Subsequent independent testing of the Hims and Hers websites using the PowerMapper SortSite tool confirmed that the barriers Ms. Jenkins encountered were not isolated incidents but part of widespread, systemic accessibility failures. *See* **Ex. A – Sort Site Reports**) The testing revealed extensive WCAG 2.1 Level A and AA violations across thousands of pages, including missing or placeholder alternative text on product images, empty buttons with no accessible names, unlabeled form fields, inaccessible menus, keyboard-inaccessible controls, and broken links. These defects prevent screen-reader software from announcing product names, describing images, identifying interactive controls, or exposing navigation structures essential for blind users to navigate and complete transactions.

37.     The SortSite reports document hundreds of instances where product images contain placeholder text such as "Image," "icon," or no alternative text at all. As a result, Ms. Jenkins' screen reader

12

could not identify products such as Hers Volumizing Shampoo, Hers Volumizing Conditioner, Hers Anti-Aging Moisturizer, Hers Vitamin C Serum, Hers Water-Based Lubricant, or Hers Minoxidil Topical Solution. Without meaningful text alternatives, she could not determine what items were being displayed or whether they matched her needs.The SortSite reports document hundreds of instances where product images contain placeholder text such as "Image," "icon," or no alternative text at all. As a result, Ms. Jenkins' screen reader could not identify products such as **Hers Volumizing Shampoo**, **Hers Volumizing Conditioner**, **Hers Anti-Aging Moisturizer**, **Hers Vitamin C Serum**, **Hers Water-Based Lubricant**, or **Hers Minoxidil Topical Solution**. Without meaningful text alternatives, she could not determine what items were being displayed or whether they matched her needs.

38.     The reports also show hundreds of empty buttons and interactive controls with no accessible name. These include "Add to Cart" buttons, product selectors, menu items, and telehealth intake controls. When Ms. Jenkins attempted to select a product or proceed to checkout, her screen reader announced these controls only as "button… button… button," providing no indication of their purpose. This prevented her from adding items to her cart or completing any part of the purchase process.

39.     Navigation barriers were also documented across thousands of pages. Menus contained incorrect or missing ARIA roles, focusable elements were hidden from the accessibility tree, and category links lacked accessible names. As a result, Ms. Jenkins could not reliably navigate to product categories such as **Hair Care**, **Skin Care**, **Sexual Wellness**, or **Weight-Loss Treatments**, nor could she access telehealth services for products such as **Hers Birth Control**, **Hers Menopause Treatments**, or **Hers Weight-Loss Medication Kits**.

13

40.     Telehealth intake forms contained unlabeled input fields, which screen readers announced only as "edit… edit… edit." These unlabeled fields prevented Ms. Jenkins from completing required medical questionnaires necessary to obtain prescription-based treatments offered by Hers. Without accessible forms, she could not initiate or complete the telehealth process for products such as **Hers Oral Weight-Loss Medication**, **Hers Birth Control**, or **Hers Mental-Health Support Services**.

41.     Keyboard inaccessibility further prevented Ms. Jenkins from activating essential controls. Several clickable elements lacked tabindex attributes or proper ARIA roles, making them unreachable through keyboard navigation. Because Ms. Jenkins relies on keyboard commands rather than a mouse, these failures blocked her from opening menus, selecting products, or advancing through checkout.

42.     Broken links across thousands of pages created additional barriers. Ms. Jenkins encountered dead ends when attempting to access product information, category pages, and informational resources. These broken links halted navigation and prevented her from completing her intended transactions.

43.     As a result of these barriers, Ms. Jenkins was unable to purchase the products she intended to buy and was excluded from the companies' online-only marketplace. The inaccessibility of the websites deprived her of independence, dignity, and equal access to goods and services that sighted consumers can obtain without difficulty. The barriers documented in the SortSite reports are systemic, appear across thousands of pages, and affect core functionality required to access the companies' goods and services.

44.     Ms. Jenkins remains interested in purchasing products from Hims and Hers,

14

including **Hers Thickening Shampoo**, **Hers Thickening Conditioner**, **Hers Hydrating Cleanser**, **Hers Hyaluronic Acid Serum**, **Hers Glide Lubricant**, **Hers Minoxidil**, and **Hers Weight-Loss Medication Kits**, among others. She intends to return to the websites to complete her purchases once the accessibility barriers are removed.

45.    Ms. Jenkins is particularly inclined to shop through the Hims & Hers websites because the company offers a unique combination of products and services not available together through traditional retailers or general online marketplaces. Hims & Hers provides a centralized platform where consumers can obtain hair-care products, skincare items, sexual-wellness products, and prescription-based treatments through an integrated telehealth model. For a blind consumer, this consolidated structure is especially valuable because it eliminates the need to navigate multiple websites, pharmacies, or in-person locations to obtain routine personal-care and health-related products.

46.    Unlike general retailers, Hims & Hers offers products that are proprietary to the brand, including **Hers Thickening Shampoo**, **Hers Thickening Conditioner**, **Hers Hydrating Cleanser**, **Hers Hyaluronic Acid Serum**, **Hers Glide Lubricant**, **Hers Minoxidil**, and **Hers Weight-Loss Medication Kits**. These items cannot be purchased from other vendors, making the website the only channel through which Ms. Jenkins can access them. The company's telehealth services — including online consultations, prescription management, and automatic refills — are also exclusive to the platform and cannot be replicated through third-party retailers.

47.    For a blind consumer, the ability to manage personal-care routines and health needs through a single, online-only platform provides significant advantages. It avoids the logistical challenges of traveling to physical stores, relying on sighted assistance, or navigating multiple

websites with varying accessibility standards. Hims & Hers also ships products directly to the consumer's home, which is particularly important for individuals with mobility limitations or those who cannot safely or independently access brick-and-mortar locations.

48.    Hims & Hers conducts its business almost entirely through its website, making the digital platform the *sole* gateway through which consumers can review product information, complete mandatory telehealth intake, communicate with licensed providers, and purchase the company's proprietary products. There is no physical storefront, no alternative ordering channel, and no accessible substitute for the website. For Ms. Jenkins, who is legally blind and relies exclusively on screen-reader technology, the website is not merely a convenience—it is the only means by which she can access essential goods and services. When the website is inaccessible, she is categorically barred from obtaining these products and services, leaving her with no accessible alternative and depriving her of the independence and autonomy that sighted consumers take for granted.

49.    Once the accessibility barriers are remediated, Ms. Jenkins fully intends to return to the websites to complete the purchases she originally sought and to access the telehealth services she was prevented from using. Her desire to obtain these products is ongoing, genuine, and tied directly to her daily personal-care needs. She remains ready and willing to complete her transactions as soon as the websites are made accessible to blind users.

50.    Because Hims & Hers operates primarily through its website, the digital platform is the only means by which Ms. Jenkins can review product information, complete telehealth intake, communicate with providers, and make purchases. The website is therefore essential to her ability to access the company's goods and services. When the website is inaccessible, she is

effectively excluded from obtaining products she uses in her daily life and cannot obtain through alternative accessible channels.

## **CLASS ACTION ALLEGATIONS**

51.    Plaintiff, ANGEL JENKINS, on behalf of herself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website www.hims.com and www.forhers.com, and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

52.    Plaintiff, on behalf of herself and all others similarly situated, seeks to certify a New York City Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York and State of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered during the relevant statutory period.

53.    Common questions of law and fact exist amongst the Class, including:

a.    Whether Defendant's Website is a "public accommodation" under the ADA;

b.    Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

c.    Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, and/or accommodations to people with visual disabilities, violating the ADA; and

d.    Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL, NYCRL, and the NYHRL

17

54.    Plaintiff's claims are typical of the Class. The Class, similar to the Plaintiff, are severely visually impaired or otherwise blind, and claims that Defendant has violated the ADA, NYSHRL, NYCRL, and/or the NYHRL by failing to update or remove access barriers on the Website so that the website can be independently accessible to the Class.

55.    Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel who is competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief concerning Plaintiff and the Class as a whole.

56.    Alternatively, Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

57.    Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

58.    Moreover, judicial economy will be served by maintaining this lawsuit as a class action for numerosity purposes in that it is likely that the number of patrons who have attempted to utilize the services of Defendant's online platform exceeds 50 or more sight-impaired individuals.

## FIRST CAUSE OF ACTION
### (Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)

59.     Plaintiff ANGEL JENKINS, on behalf of herself and the Class Members, repeats

and realleges every allegation of the preceding paragraphs as if fully set forth herein.

2.      Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in the full and
equal enjoyment of the goods, services, facilities, privileges, advantages, or
accommodations of any place of public accommodation by any person who owns,
leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

60.     Defendant's Website, www.hims.com and www.forhers.com, that is offered as a link

to the company is a service that is offered to the general public, and as such, must be equally

accessible to all potential consumers.

61.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to

deny individuals with disabilities the opportunity to participate in or benefit from the products,

services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. §

12182(b)(1)(A)(i).

62.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also

includes, inter alia:

[A] failure to make reasonable modifications in policies, practices, or procedures,
when such modifications are necessary to afford such goods, services, facilities,
privileges, advantages, or accommodations to individuals with disabilities, unless
the entity can demonstrate that making such modifications would fundamentally
alter the nature of such goods, services, facilities, privileges, advantages or
accommodations; [and] a failure to take such steps as may be necessary to ensure
that no individual with a disability is excluded, denied services, segregated or
otherwise treated differently than other individuals because of the absence of
auxiliary aids and services, unless the entity can demonstrate that taking such steps

19

would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

63.     The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

64.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

<u>**SECOND CAUSE OF ACTION**</u>
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

65.     Plaintiff, ANGEL JENKINS, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

66.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public

accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

67.    Defendant is subject to NYCHRL because it owns and operates the Website www.hims.com and www.forhers.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

68.    Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, www.hims.com and www.forhers.com causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

69.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

70.    Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

      a.    constructed and maintained a Website that is inaccessible to blind class

members with knowledge of the discrimination; and/or

b.    constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

71.    Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

72.    As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

73.    Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

74.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

75.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

76.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**THIRD CAUSE OF ACTION**

**(New York State Human Rights Law)**
**("NYSHRL")**

77.     Plaintiff, ANGEL JENKINS, on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

78.     At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

79.     Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

80.     Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.hims.com and www.forhers.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9).  Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

81.     Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

82.     Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

23

83.    Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

84.    Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities.  This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device.  Article 15 of N.Y. Exec. Law § 296(2)(c).

85.    The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

86.    Established guidelines exist for making websites accessible to disabled individuals.

The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

87.     Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

88.     Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

89.     Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violation of New York State Civil Rights)**
**("NYCRL")**

90.     Plaintiff, ANGEL JENKINS, on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

91.     Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

92.     Persons within New York State are entitled to full and equal accommodations,

advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

93.    No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

94.    § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

95.    Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

96.    Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

97.    Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

98.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the

provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

99.    Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

## FIFTH CAUSE OF ACTION
### (Declaratory Relief)

100.    Plaintiff, ANGEL JENKINS, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

101.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

102.    A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a.    A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.    A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.    An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.    Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f.    Pre-judgment and post-judgment interest;

g.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.    Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
       January 30, 2026

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

_____

Robert Schonfeld, Esq.
*Attorneys for Plaintiff*
825  Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com